## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROBERT W. CLOUGH, II on behalf of          :
himself and others similarly situated,      :
                                            :
          Plaintiff,                        :        Case No.
                                            :
v.                                          :
                                            :
                                            :
SUNPATH LTD. and AUTOMOTIVE                 :
SERVICES CENTER                             :
                                            :
          Defendants.                       :

_____ /

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Robert W. Clough, II ("Mr. Clough" or "Plaintiff") brings this action to

enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C.

§ 227, a federal statute enacted in 1991 in response to widespread public outrage about the

proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,*

132 S. Ct. 740, 745 (2012).

2.      In violation of the TCPA, Sunpath Ltd. ("Sunpath") hired Automotive Services

Center to originate new customers, and Automotive Services Center initiated a pre-recorded

telemarketing call to a cellular telephone number Mr. Clough had registered on the National Do

Not Call Registry for the purposes of advertising Sunpath goods and services, using an

automated dialing system, which is prohibited by the TCPA.

3.      The Plaintiff never consented to receive the call, which was placed to him for

telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of

thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls

from or on behalf of the Defendant.

4.      A class action is the best means of obtaining redress for the Defendant's wide

scale illegal telemarketing, and is consistent both with the private right of action afforded by the

TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.


**Parties**

5.      Plaintiff Robert W. Clough, II is a resident of the state of New Hampshire.

6.      Defendant Sunpath, Ltd. is a Delaware corporation that has its principal office in

Braintree, MA, in this District, and conducts business in this District.

7.      Automotive Services Center is a company with its principal place of business at

1261 E. Dyer Rd., Suite 230, Santa Ana, CA 92705. Automotive Services Center engages in

telemarketing nationwide, including into this District.


**Jurisdiction & Venue**

8.      The Court has federal question subject matter jurisdiction over these TCPA

claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are

residents of this district for Venue purposes. Venue is also proper pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred

in this District as the telemarketing calls that gave rise to the Plaintiff's claims were contracted

from this District through Sunpath's agreement with vendors.

### The Telephone Consumer Protection Act

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

11.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

17.     Sunpath is a company that offers extended warranties on automobiles.

18.     To generate new clients, Sunpath relies on telemarketing.

19.     However, Sunpath's contact with the potential new customers is limited, and the telemarketing is conducted by third parties.

20.     One of Sunpath's new strategies for telemarketing involve hiring third parties that make use of an automatic telephone dialing system ("ATDS") to solicit potential customers through the use of a predictive dialer.

21.     Coupled with that technology, Sunpath employs the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person.

22.     Sunpath engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

23.     Through this method, Sunpath shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Call to Mr. Clough

24.     Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

25.     Mr. Clough placed his cellular telephone number, 603-731-XXXX on the National Do Not Call Registry in February of 2008.

26.     Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Automotive Services Center placed an automated telemarketing call to him on May 16, 2017.

27.     When the call was answered, there was a lengthy pause and a click followed by silence before a pre-recorded message came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

28.     In fact, the use of a pre-recorded message itself is indication that the calls were made with an ATDS, as it would not make any logical sense to hand-dial a call only to play a pre-recorded message.

29.     To identify the calling party, the Plaintiff pressed 1.

30.     When the Plaintiff finally connected with a live individual, he was solicited for an extended warranty purchase for Sunpath services.

31.     Confirming that the call was made in an attempt to solicit Sunpath services, the Plaintiff received a proposed contract in an e-mail following the call, which is attached as Exhibit 1.

32.     The Caller ID that displayed on the telemarketing call was (520)-366-3517.

33.     Other individuals have complained about receiving solicitation calls from the same CID:

A.     Called 3x in a row on unlisted cell number that is also on "Do not call" registry. No voicemail. Number blocked. *Caller: Unknown*

B.     Received call, answered but did not say anything, they didnt say anything and hung up after 20 seconds. *Caller: 520-366-3517.*
*See* http://800notes.com/Phone.aspx/1-520-366-3517 (last visited June 20, 2017).

C.     Scam caller. Other entries on this site and others show they're calling about car warranties. I bought my car used directly from the original owner so nobody should be calling me about a warranty
*See* https://www.everycaller.com/phone-number/1-520-366-3517 (last visited June 20, 2017).

34.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

35.     Moreover, these calls injured plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

### Sunpath's Liability for the Telemarketing Call

36.     Sunpath is a "person," as defined by 47 U.S.C. § 153(39).

37.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

38.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

39.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Sunpath may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would in many cases leave consumers without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (¶ 34).

41.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

42.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

43.     Sunpath is legally responsible for ensuring that Automotive Services Center complied with the TCPA, even if Sunpath did not itself make the calls.

44.     Sunpath knowingly and actively accepted business that originated through the illegal telemarketing calls from Automotive Services Center.

45.     By hiring a company to make calls on its behalf, Sunpath "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

46.     Similarly, by accepting these contacts, the company that Automotive Services Center hired "manifest[ed] assent or otherwise consent[ed]  . . . to act" on behalf of Sunpath, as described in the Restatement (Third) of Agency. As such, Automotive Services Center is an agent of Sunpath.

47.     Moreover, Sunpath maintained interim control over Automotive Services Center's actions.

48.     For example, Sunpath had absolute control over whether, and under what circumstances, it would accept a customer.

49.     Furthermore, Sunpath had day-to-day control over Automotive Services Center's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Sunpath. Sunpath failed to make such an instruction to Automotive Services Center, and as a result, is liable for Automotive Services Center's conduct.

50.     Additionally, Sunpath restricted the geographic location that Automotive Services Center could promote Sunpath.

51.     Sunpath also gave interim instructions to Automotive Services Center by providing the volume of calling and leads it would purchase.

52.     Automotive Services Center transferred customer information, including the directly to Sunpath.  Thus, the company that Sunpath hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, the company that Sunpath hired is an apparent agent of Sunpath.

53.     Sunpath also gave Automotive Services Center the power to affect its legal relations. In fact, the contract that was provided to the Plaintiff as a result of the telemarketing call included the following terms:

- "this SERVICE CONTRACT is between YOU and SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware" (defined in the contract as the "ADMINISTRATOR)
- "Sunpath is also the SERVICE CONTRACT ADMINISTRATOR and handles all administrative functions of this SERVICE CONTRACT."
- "All inquiries should be directed to SunPath LTD Corp. of Delaware at 888-990-7786."
- "the ADMINISTRATOR will approve the claim and pay the charges in accordance with the terms of this SERVICE CONTRACT"

*See* Exhibit 1.

54.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

55.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

56.     The class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

57.     Excluded from the classes are the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

58.     The class as defined above is identifiable through phone records and phone number databases.

59.     The potential class members number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

60.     Plaintiff is a member of the proposed class.

61.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

        a.      Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

        b.      Whether Defendant placed calls using a pre-recorded message;

        c.      Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

        d.      Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

62.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

63.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the

classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

64.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

65.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

66.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

67.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling provisions

68.     Plaintiff Clough incorporates the allegations from all previous paragraphs as if fully set forth herein.

69.     The foregoing acts and omissions of Sunpath and/or its affiliates, agents, and/or other persons or entities acting on Sunpath' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular

telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

70.     As a result of Sunpath's and/or its affiliates, agents, and/or other persons or entities acting on Sunpath' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

71.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Sunpath and/or its affiliates, agents, and/or other persons or entities acting on Sunpath's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

72.     The Defendant's violations were negligent and/or knowing.

## Relief Sought

For himself and all class members, Plaintiff request the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representative of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Sunpath and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Sunpath and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.     An award to Plaintiff and the Class of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just,

and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By its attorneys

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net